UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>    vs.<br><br>JOSEPH FLYING HORSE,<br><br>            Defendant. | CR. 20-50035-01-JLV<br><br><br>ORDER |

**TABLE OF CONTENTS**

I.  Introduction  ...................................................................2

II.  Analysis of the Speedy Trial Act  ....................................2
        A.    Facts  ...................................................................5
        B.    Magistrate Judge's R&Rs, Orders, Defendant's
              Objections and Subsequent Motions  ......................24
        C.    Resolution of the Speedy Trial Act Claims ...............29

III.  Sixth Amendment  .......................................................33
        A.    Length of Delay.....................................................34
        B.    Reasons for Delay ..................................................34
        C.    Assertion of Speedy Trial Right................................35
        D.    Prejudice...............................................................35
        E.    Resolution of the Sixth Amendment Claims.............37

IV.  Defendant's Objections to Reports and Recommendations ...........37
        A.    Objection to Document 258.....................................38
        B.    Objection to Document 259.....................................39
        C.    Objection to Document 261  ...................................40
        D.    Objection to Document 264.....................................40
        E.    Objection to Document 325.....................................44

V.  Defendant's Objections to Orders  ..................................45
        A.    Objections to Document 262  ..................................45
        B.    Objections to Document 263  ..................................46
        C.    Objections to Document 265  ..................................48
        D.    Objections to Document 266  ..................................50

|   | E. | Objections to Document 269 | ................................. | 53 |
|   | F. | Objections to Document 326 | ................................. | 54 |
|   | G. | Objection to Document 328 | ................................. | 55 |
|   | H. | Objection to Document 329 | ................................. | 56 |

| VI. | Tenth Motion to Dismiss | ............................................. | 57 |

| VII. | Order | ................................................................... | 58 |

## I. INTRODUCTION

Defendant Joseph Flying Horse, appearing *pro se*, filed five objections to reports and recommendations and eight objections to orders of the magistrate judge.   Defendant also filed a tenth motion to dismiss the indictment.   For the reasons stated below, defendant's objections are overruled and the tenth motion to dismiss is denied.

## II. ANALYSIS OF THE SPEEDY TRIAL ACT

The Speedy Trial Act, 18 U.S.C. § 3161, *et seq.*, ("STA") provides, in part, "the trial of a defendant charged in an . . . indictment . . . shall commence within seventy days from the filing date (and making public) of the . . . indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs . . . ."   Id. § 3161(c)(1).   Excluded from this time requirement are a number of events and activities.   See 18 U.S.C. § 3161(h).   Subsection (h) provides, in pertinent part, the following:

> The following periods of delay shall be excluded . . . in computing the time within which the trial of any such offense must commence:
>
> (1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to . . .

2

> (C) delay resulting from any interlocutory appeal;
>
> (D) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;
> . . .
> (H) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.

Id.  Other provisions within subsection (h) which exclude days from the speedy trial clock and are pertinent to this case provide as follows:

> (6)   A reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted.
>
> (7)(A) Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

18 U.S.C. §§ 3161(h)(6) & (7)(A).

Subsection (c)(1) determines when the speedy trial clock begins and subsection (h) sets forth those events or activities which pause or toll the clock. See United States v. Leone, 823 F.2d 246, 249 (8th Cir. 1987) ("Section 3161(c)(1) . . . is unambiguous in stating that upon an initial indictment, the seventy-day clock begins to run upon the later of either (1) the . . . indictment, or (2) the defendant's appearance before a judicial officer of the court.   Section 3161(h) of the Act sets out several periods of delay which shall be excluded from the running of the seventy-day period.").   Only those days not excludable under

3

subsection (h) count against the defendant's STA right of trial within seventy days.

"[E]very motion filed by a defendant, whether or not it is frivolous and whether or not he is represented at the time of filing, tolls the speedy trial clock." United States v. El-Alamin, 574 F.3d 915, 923 (8th Cir. 2009) (citing United States v. Williams, 557 F.3d 943, 952 (8th Cir. 2009)).   "Periods of delay caused by pretrial motions, whether filed by the defendant . . . or the prosecution, are excluded from the calculation of this 70-day time frame."   United States v. Shepard, 462 F.3d 847, 863 (8th Cir. 2006).   "Under subsection [D], '[a]ny pretrial motion . . . creates excludable time, even if it does not in fact delay trial.' "   United States v. Titlbach, 339 F.3d 692, 698 (8th Cir. 2003) (internal citation omitted).   Finally, it must be remembered that "[t]he period of excludable delay resulting from the . . . motion includes both the date on which the motion was filed and the date on which the motion was decided."   United States v. Moses, 15 F.3d 774, 777 (8th Cir. 1994).

In a multi-defendant case, "[e]xclusions of time attributable to one defendant apply to all codefendants."   United States v. Mallett, 751 F.3d 907, 911 (8th Cir. 2014) (internal quotation marks omitted).   Any motion by a codefendant stops the STA clock for all of the codefendants.   Id.

The defendant has the burden to show his motion to dismiss pursuant to the STA should be granted.   United States v. Adejumo, 772 F.3d 513, 521 (8th Cir. 2014).   "If a defendant is not brought to trial within the time limit

4

required by section 3161(c) as extended by [the excluded delays of] section 3161(h), the . . . indictment shall be dismissed on motion of the defendant." United States v. Blankenship, 67 F.3d 673, 675 (8th Cir. 1995) (citing 18 U.S.C. § 3162(a)(2)).

A.   FACTS

With this explanation the court begins its statement of the facts in Mr. Flying Horse's case for consideration of defendant's motion to dismiss under the Speedy Trial Act and the Sixth Amendment.   (Docket 250).   Specific applications of the STA will be provided where appropriate.

Mr. Flying Horse together with four codefendants were charged in a multi-count complaint on May 20, 2020.   (Docket 1).   Mr. Flying Horse was charged in count I with possession of a stolen firearm, a SIG Sauer Incorporated, model SIG516, 5.56 caliber, semi-automatic rifle, bearing serial number 20G003975 and a SIG Sauer Incorporated, model Sig MCX, 5.56 caliber semi-automatic rifle bearing serial number 63C029873 in violation of 18 U.S.C. §§ 922(j) and 924(a)(2) and in count III he was charged with possession of firearms, the same two firearms described in count I, while under indictment in violation of 18 U.S.C. §§ 922(n) and 924(a)(1)(D).   Id. at p. 1.

On May 26, 2020, Mr. Flying Horse appeared before United States Magistrate Judge Daneta Wollmann for an initial appearance and detention hearing.   (Docket 6).   An Assistant Federal Public Defender for the Districts of South Dakota and North Dakota was appointed to represent Mr. Flying Horse.

Id.   The magistrate judge ordered Mr. Flying Horse detained pending a preliminary hearing.   (Docket 7).   On June 3, 2020, the magistrate judge considered the evidence presented during the preliminary hearing and entered a finding of probable cause.   (Dockets 18 & 20).

On June 11, 2020, Mr. Flying Horse filed a *pro se* motion seeking new counsel.   (Docket 25).   The same day, a grand jury charged Mr. Flying Horse and his four codefendants in a multi-count indictment.   (Docket 26).   Mr. Flying Horse was indicted in count I and count V with the same two offenses charged in the complaint.   Id. at pp. 1 & 3.

On June 17, 2020, the magistrate judge held an *ex parte* hearing on Mr. Flying Horse's motion for new counsel.   (Docket 28).   During the hearing, the defendant requested permission to proceed on a *pro se* basis as opposed to asking for a new attorney.   Id.   The magistrate judge conducted a Faretta[1] hearing, concluded Mr. Flying Horse was qualified to proceed on a *pro se* basis and denied the earlier motion for new counsel.[2]   Id.   The same day in a separate hearing with government counsel present, Mr. Flying Horse was arraigned on the indictment.   (Docket 29).   Mr. Flying Horse's speedy trial clock started on this date.   Leone, 823 F.2d at 249.

Two days later on June 19, 2020, codefendant Aloysius Brave Hawk was arraigned on the indictment.   His arraignment restarted the STA clock for both

---

[1]Faretta v. California, 422 U.S. 806 (1975).

[2]An order permitting Mr. Flying Horse to proceed on a *pro se* basis was entered on June 24, 2020.   (Docket 39).

defendants at 70 days.   "Where multiple defendants are joined for trial and no motion for severance has been granted, the statutory time period does not begin to run until the last codefendant has been . . . arraigned[.]"   United States v. Patterson, 140 F.3d 767, 772 (8th Cir. 1998).

On June 26, 2020, codefendant Keith Looking Brave was arraigned on the indictment.   His arraignment restarted the STA clock at 70 days for all three defendants.   Patterson, 140 F.3d at 772.

On July 2, 2020, Mr. Flying Horse filed a motion to dismiss counts I and V of the indictment.   (Docket 51).   While Mr. Flying Horse's motion is pending, the STA is paused or tolled.   18 U.S.C. §3161(h)(1)(D).   On July 6, 2020, Mr. Flying Horse filed a motion for a hearing on his motion to dismiss.   (Docket 53).

On July 13, 2020, Mr. Looking Back filed a motion for a continuance. (Docket 58).   On July 20, 2020, the court granted Mr. Looking Back's motion. (Docket 63).   While the STA clock was already paused because of Mr. Flying Horse's motion to dismiss, Docket 51, the order found "[t]he period of delay resulting from this continuance is excluded in computing the time within which the trial of the case must commence."   (Docket 63 at p. 3) (referencing 18 U.S.C. § 3161(h)(7)(A)).   Based on the order, the STA clock was stopped for all three defendants until September 29, 2020, the new trial date.   Id.; Mallett, 751 F.3d at 911.

On July 14, 2020, the magistrate judge ordered the government to file a response to Mr. Flying Horse's motion to dismiss by July 20, 2020.   (Docket 59).

The same day, the government filed a motion for extension of time to file a response to Mr. Flying Horse's motion to dismiss.   (Docket 60).   In its motion, the government represented to the court that because the case was sealed the government "was unaware [Mr. Flying Horse's] motion had been filed until contacted by the Court."   Id.   On July 15, 2020, the magistrate judge granted the government's motion.[3]   (Docket 61).   On July 16, 2020, the government filed its response to the defendant's motion to dismiss.   (Docket 62).

On July 20, 2020, Mr. Flying Horse filed a "letter for default judgment" on his motion to dismiss.   (Docket 64).   His motion claimed the government failed to timely file a response to the motion to dismiss, making his motion "un-opposed."   Id. (emphasis omitted).   Three days later on July 23, 2020, Mr. Flying Horse filed a response in opposition to the government's motion for extension of time.   (Docket 66).   He claims the government's justification for an extension to file a response was incorrect because Mr. Flying Horse had personally served a copy of the motion to dismiss by mail.   Id. at p. 1 (referencing Docket 51 at p. 2).

On July 21, 2020, Mr. Flying Horse filed a motion to suppress.   (Docket 65).   The motion sought suppression of "the video-footage brought against Defendant on June 3, 2020, at the preliminary hearing . . . on the ground that at said hearing . . . Plaintiff failed to properly lay foundation for how it obtained said

---

[3]It was an accurate conclusion by the magistrate judge that the government stated a proper basis for seeking an extension of time within which to file a response to defendant's motion to dismiss.   28 U.S.C. § 636(b)(1)(A).

8

footage; claiming the video was taken from who they believed to be Defendant's cell-phone." Id. (emphasis omitted).   Mr. Flying Horse claimed the cell phone did not belong to him and the government did not have a search warrant.   Id.

On July 24, 2020, the government filed a motion seeking an extension of time to file its response to defendant's motion to suppress.   (Docket 67).   On July 27, 2020, the magistrate judge granted the government's motion.   (Docket 68).   The same day, Mr. Flying Horse filed a notice of his intention to file an objection to the July 14, 2020, order.   (Docket 70) (referencing Docket 59).

On July 28, 2020, Mr. Flying Horse filed a motion to strike the government's motion for an extension of time.   (Docket 73) (referencing Docket 67).   In the alternative, Mr. Flying Horse moved the court to strike the government's response in opposition to defendant's motion to dismiss and motion for default.   Id.   He asserted as the basis for his motions that the government "failed to seek leave of the court before filing . . . its untimely documents."   Id. (emphasis omitted).

On July 28, 2020, Mr. Flying Horse also filed three requests for judicial notice.   (Dockets 74-76).[4]   Among other things, the first request for judicial notice asserted (1) Mr. Flying Horse is a sovereign; (2) the court does not have personal jurisdiction over him; and (3) he is being unconstitutionally denied his freedom and liberty.   (Docket 74 at p. 1).

---

[4]The content of defendant's first three requests for judicial notice are summarized in the order addressing the first nineteen requests for judicial notice.   (Docket 263 at pp. 4-7).

The second request for judicial notice is in essence Mr. Flying Horse's supplemental arguments addressing matters previously ruled on by the magistrate judge.[5]   (Docket 75).   In the second request, Mr. Flying Horse justifies his acquisition of the firearms which are the subject of the counts of the indictment against him.

> [I]n order to give clarity and understanding as to why defendant sought to acquire firearms ("guns") is because of the Covid-19 pandemic; whereas he wanted to be prepared to defend his family, friends and loved ones from any and all hostile actions and/or threats that should/could be made against them, their home(s) and/or their lives, due to what at the time seemed to be coming a very probable shortage of resources of all types; whereas, such scenerio(s) [sic] is/are set forth and reflected in the AMC television series, "The Walking Dead."   Thus, this type of action(s) that defendant is preparing for and intended to take/make are protected and guaranteed to him pursuant to the Second Amendment of the United States Constitution.

Id. at p. 2 (emphasis omitted).

The third request was yet another legal argument in opposition to defendant Looking Back's motion for continuance.[6]   (Docket 76).   Because Mr. Flying Horse is proceeding *pro se* and can only view filings in the court record on a scheduled basis, he asserted his "due process rights concerning notice and an opportunity to be heard were not protected; and . . . he is now unfairly prejudiced, at least thrice, where the newly scheduled trial date of September 29,

---

[5]See Docket 263 at pp. 5-6.

[6]See footnote 4; Docket 263 at p. 7.

2020, unfairly extends his detention and confinement within the [Pennington County Jail]."[7]   Id. at pp. 1-2.

On July 28, 2020, Mr. Flying Horse filed a notice of interlocutory appeal to the United States Court of Appeals for the Eighth Circuit.   (Docket 79).[8]   The interlocutory appeal focused on the magistrate judge's order permitting Mr. Flying Horse to proceed on a *pro se* basis subject to the discovery restrictions in Standing Order 16-04.   Id. (referencing Dockets 39 & 39-1).   On August 3, 2020, the Clerk of Court transmitted the notice of appeal to the Eighth Circuit. (Docket 80).

On August 3, 2020, Mr. Filing Horse filed an objection to the magistrate judge's July 27, 2020, order.   (Docket 81) (referencing Docket 68).   The objection raises the same arguments previously advocated in earlier filings by Mr. Flying Horse.   Compare Dockets 66, 73 & 81.

On August 4, 2020, the government timely filed its response to Mr. Flying Horse's motion to suppress.   (Docket 82) (referencing Docket 65).   After laying out the pertinent facts, the government's brief argued "[t]he cell phone was found abandoned in a stolen vehicle and a search warrant was in fact obtained to search the cell phone."   Id. at p. 3.   According to the government:

---

[7]Unless otherwise noted, the court intends to treat Mr. Flying Horse's requests for judicial notice as memoranda advocating his arguments on issues raised.

[8]Mr. Flying Horse's filings at Dockets 77 and 78 are duplicates of Dockets 73 and 76.

> Among other items located on the phone, there were photographs and videos showing [Mr. Flying Horse] in possession of multiple firearms, including the Sig MCX rifle stolen from Pawn With Us on April 19, 2020, the information captured by the pictures and videos showing the defendant in possession of the Sig MCX rifle were taken on April 19, 2020.

Id.

On August 4, 2020, Mr. Flying Horse filed a response in opposition to the government's motion for extension of time and the magistrate judge's July 24, 2020, order.   (Docket 83) (referencing Dockets 67 & 68).   This submission was in addition to his earlier filings on the same subjects.   See Dockets 70, 73 & 81.

On August 6, 2020, Mr. Flying Horse filed a fourth request for judicial notice.[9]  (Docket 84).   This request duplicated the first request.   Compare Dockets 74 at p. 1 & 84.   Attached to the fourth request was Mr. Flying Horse's "Merits Brief" dated September 13, 2016, to the United States Court of Appeals for the Eighth Circuit in his appeal from the District of South Dakota case, CR-16-50076.   (Docket 84 at pp. 3-15).

On August 7, 2020, Mr. Flying Horse filed a supplement to his interlocutory appeal and a fifth request for judicial notice.[10]   (Dockets 85 & 86). The fifth request added additional details to Mr. Flying Horse's process of serving documents upon the government, which he intended to file with the District Court.   (Docket 86 at pp. 1-2).

---

[9]See Docket 263 at p. 8.

[10]See Docket 263 at p. 9.

On August 12, 2020, because of the number of motions and issues raised by Mr. Flying Horse, the court suspended the STA deadlines pending resolution of those matters.   (Docket 87).   The order stated "[b]ased on the ends of justice and 18 U.S.C. § 3161(h)(7), the deadlines and trial date [are] canceled pending resolution of motions filed by Joseph Flying Horse."   Id.   On August 13, 2020, the Eighth Circuit dismissed Mr. Flying Horse's interlocutory appeal for lack of jurisdiction.   (Docket 90).

On August 17, 2020, Mr. Flying Horse filed a motion for return of personal property.   (Docket 93).   The motion sought return of "defendant's . . . 1999 GMC Yukon Denali Sport" which had been seized by the United States Marshals Service at the time of Mr. Flying Horse's arrest.   Id. at p. 1 & 1 n.1.   If not returned to Mr. Flying Horse immediately, he sought return of the vehicle at "the closing of the proceedings initiated against him by the [government] in the above-captioned matter."   Id. at p. 1.     The government's response, filed August 20, 2020, represented to the court that "[n]o vehicles, including a 1999 GMC Yukon, have been seized by the United States as part of the case against the defendant."   (Docket 96 at p. 1).   It asked that "the defendant's motion be denied as moot."   Id.

On August 21, 2020, Mr. Flying Horse filed a motion to dismiss the indictment for the government's failure to prosecute, a motion for sanctions and a motion for appointment of appellate counsel.   (Dockets 97-99).   The motion to dismiss argues the government "failed to prosecute the above-captioned matter

against [Mr. Flying Horse], whereby leaving this court in want of prosecution; whereas plaintiff has not resisted, responded to, nor opposed any of defendant's filings since July 27, 2020."   (Docket 97 at p. 1).   The motion for sanctions against the government was premised on Mr. Flying Horse's belief (1) the court should grant the August 17, 2020, motion for return of the vehicle; (2) defendant should be restored to his "economic & living position prior to his arrest on May 22, 2020"; (3) for "$100 for every hour he spent detained and restrained from his Liberty and Freedom, against his will in the Pennington County Jail"; (4) restraining the government from "infringing upon him attempting to legally own firearm(s)"; and (5) reimbursing him for the cost of copies.   Id. (emphasis omitted).   The justifications for these sanctions in Mr. Flying Horse's view were the false charges brought against him and the false government representations in its motions for extensions of time.   Id.   The motion for appointment of appellate counsel was to assist Mr. Flying Horse with his appeal.   (Docket 99 at p. 1 n.1).

On August 24, 2020, a fourth co-defendant Blake Two Eagle was arraigned on the indictment.   (Docket 101).   His arraignment restarted the STA clock for all four defendants at 70 days.   Patterson, 140 F.3d at 772.   The STA clock remained stopped by the August 12, 2020, order suspending the STA deadlines pending resolution of Mr. Flying Horse's motions.   (Docket 87).

On August 25, 2020, the government responded to Mr. Flying Horse's motion to dismiss for failure to prosecute and his motion for sanctions.

(Dockets 113 & 114).   Both of the government's responses asked that
defendant's motions be denied as frivolous.   Id.

On August 26, 2020, the fifth codefendant Bison Little Spotted Horse was
arraigned on the indictment.   (Docket 121).   Again, Mr. Little Spotted Horse's
arraignment restarted the STA clock at 70 days for all five defendants.
Patterson, 140 F.3d at 772.   However, the August 12, 2020, order suspending
the STA deadlines pending resolution of Mr. Flying Horse's motions remained in
effect.   (Docket 87).

On September 2, 2020, Mr. Flying Horse filed a reply brief in support of his
motion to dismiss for failure to prosecute and his motion for sanctions.   (Docket
128) (referencing Dockets 97 & 98).   He also filed a sixth request for judicial
notice.[11]   (Docket 129).   On September 10, 2020, Mr. Flying Horse filed a
seventh request for judicial notice.[12]   (Docket 130).   As attachments to the
seventh request, among other items, Mr. Flying Horse included a photograph of a
handgun, a bill of sale by which he, as the prospective purchaser, attempted to
acquire a Hi Point 9mm pistol on April 28, 2020, and a firearms transaction
record of April 29, 2020.   (Docket 130-1 at pp. 8-11).   According to the bill of
sale, the purchase price was refunded to Mr. Flying Horse on May 6, 2020.   Id.
at p. 9.

---

[11]The magistrate judge's order summarized this request.   See Docket
263 at pp. 9-10.

[12]See Docket 263 at pp. 10-11.

15

Relevant to the STA, Mr. Two Eagle filed a motion for reconsideration of pretrial release on September 23, 2020.   (Docket 141).   The STA clock was already stopped by Mr. Flying Horse's multiple motions and the August 12, 2020, order.   See Docket 87.

While the STA clock was stopped, on October 13, 2020, Mr. Flying Horse filed his third motion to dismiss count V and his fourth motion to dismiss count I of the indictment.   (Dockets 147 & 148).   Accompanying those filings was Mr. Flying Horse's "ninth request for judicial notice."[13]   (Docket 149) (capitalization omitted).   The next day, the government filed its responses to defendant's motions.   (Dockets 150 & 151).

On October 15, 2020, the magistrate judge granted Mr. Two Eagle's motion for reconsideration of his pretrial release.   (Docket 152).   The next day, Mr. Looking Back filed an emergency motion for a furlough.   (Docket 153).   That same day, October 16, the magistrate judge denied Mr. Looking Back's motion. (Docket 154).

On October 19, 2020, Mr. Flying Horse filed a demand directed to the South Dakota Division of Criminal Investigation for the return of a Motorola cell phone, DeWalt tools and bolt cutters.   (Docket 155).   While these were apparently items found in an abandoned, "crashed" vehicle in this case, Mr. Flying Horse claims these items were stolen from him.   Id. at p. 1.   These items also constituted part of the justification for the motion for sanctions filed earlier.

---

[13]See Docket 263 at p. 13.

16

Id. at p. 2.   Accompanying the demand was Mr. Flying Horse's eighth request for judicial notice.[14]   (Docket 156).   The court assumes Mr. Flying Horse intended this request for judicial notice to be considered a motion seeking the return of the items of property identified in the demand.   Compare Dockets 155 and 156.

On October 29, 2020, Mr. Flying Horse filed a motion for a detention hearing, a tenth request for judicial notice[15] and a motion for extension of time. (Dockets 166, 168 & 169).   Attached as an exhibit to the tenth request for judicial notice, Mr. Flying Horse filed a marked-up copy of the indictment in this case with the words "rejected & returned I do not consent to these proceedings" and signed his name.   (Docket 168-1 at p. 1) (capitalization omitted).   The motion for extension of time requested additional time to respond to the government's briefs in opposition to defendant's third motion to dismiss count V and his fourth motion to dismiss count I of the indictment.   (Docket 169 at p. 1).

On October 30, 2020, Mr. Flying Horse filed a supplement in support of his motion for a detention hearing.   (Docket 170) (referencing Docket 166).   On the same day, the magistrate judge granted defendant's motion for extension of time, allowing him until November 2, 2020, to file his reply briefs.   (Docket 171).

---

[14]See Docket 263 at p. 12.

[15]See Docket 263 at p. 14.

On November 3, 2020, Mr. Flying Horse filed his eleventh[16] and twelfth requests for judicial notice.[17]   (Docket 172 & 173).   Under the prison mailbox rule these filings were actually filed as of October 29, 2020.[18]   (Docket 172 at p. 4).   In the eleventh request, Mr. Flying Horse again asserted his position as a sovereign.   (Docket 172 at p. 1).   The twelfth request gave notice to the court that another federal inmate executed a bill of sale to Mr. Flying Horse for a "Browning, Model X Bolt, 300 Winchester Magnum caliber bolt-action rifle, bearing serial number 04460ZN354."   (Docket 173 at p. 1 ¶ 1).   According to Mr. Flying Horse, the transfer of ownership of this rifle would not occur until his state and federal charges were resolved.   Id.   Alleging the firearm had a value of "at least $1,700," Mr. Flying Horse claimed a property interest in the rifle even though the jail staff would not return the bill of sale to him.   Id. ¶¶ 2 & 3.   The twelfth request also gave notice that another federal inmate entered into an oral contract with Mr. Flying Horse by which he was to receive ownership of one "Phoenix Arms, model HP22A pistol, 22 caliber handgun, bearing serial number 4304547."   Id. ¶ 6.   Again, ownership of this firearm was not to transfer until resolution of Mr. Flying Horse's state and federal charges.   Id.

----

[16]See Docket 263 at p. 14.

[17]See Docket 263 at pp. 15-16.

[18]"[T]he 'prison mail box rule' . . . provides that pro se prisoner filings are considered timely filed if they are deposited in the prison's internal mail system on or before the last day for filing."   United States v. Bordeaux, No. 3:07-CR-30060, 2011 WL 1549401, at *7 n.3 (D.S.D. Apr. 21, 2011) (internal citations omitted).

18

On November 4 and 5, 2020, Mr. Flying Horse filed two separate reply briefs addressing his motions to dismiss counts I and V of the indictment. (Dockets 174 & 175) (referencing Dockets 147 & 148).   On November 9, 2020, Mr. Flying Horse filed his thirteenth request for judicial notice.[19]   (Docket 177). The essence of this request was that because Mr. Flying Horse is a Native American, the "Court lacks personal-matter and subject-matter jurisdiction over . . . Flying Horse, except through what is provided to it by treaties made with the people of the [Standing Rock Sioux Tribe]."   Id. at p. 4.

On November 13, 2020, Mr. Flying Horse submitted a letter to the Clerk of Court and a separate letter to United States Attorney Parsons together with another motion to dismiss counts I and V of the indictment and a second motion for an extension of time to file a reply.   (Dockets 178-181).   Styled as the defendant's fifth motion to dismiss, Mr. Flying Horse sought dismissal of counts I and V as multiplicitous and being in violation of the double jeopardy clause. (Docket 179 at p. 1).   The second motion for an extension sought additional time to respond to the government's brief opposing defendant's fourth motion to dismiss.   (Docket 181 at p. 1).   The good cause asserted for this extension was because Mr. Flying Horse had just been "released from [a] 23½ hour lock-down" at the Pennington County Jail.   Id.

On November 16, 2020, the government filed its response to Mr. Flying Horse's fifth motion to dismiss.   (Docket 182) (referencing Docket 179).   On

---

[19]See Docket 263 at pp. 16-17.

November 23, 2020, Mr. Flying Horse filed a reply brief in support of the motion. (Docket 186).

On December 10, 2020, Mr. Flying Horse filed another motion to dismiss count I of the indictment together with a motion for the return of the cell phone, tools and bolt cutter raised in an earlier motion.   (Docket 187 & 188) (referencing Docket 155).   In this sixth motion to dismiss, Mr. Flying Horse asserted count I violates "the final clause of Amendment VIII, where [a case] was dismissed against a defendant in a separate case within this Honorable Court's jurisdiction, whom [sic] is similarly situated."   (Docket 187 at p. 1).   The motion contended that to continue with prosecution in his case would result in a disproportionate sentence when compared to a case which was dismissed because the person did not know their gun had been stolen.   Id. at n.2 & 3. The same day, the government filed its response to Mr. Flying Horse's sixth motion to dismiss count I.   (Docket 189) (referencing Docket 187).

On December 11, 2020, Mr. Flying Horse filed a fourteenth request for judicial notice.[20]   (Docket 191).   This request again reargued his objection to the magistrate judge's order granting the government's motion for an extension of time to respond to defendant's July 2, 2020, motion to dismiss.   Id. (referencing Dockets 59-62).   The fourteenth request also argued for the court's adoption of defendant's "justification defense[] [of]. . . necessity."   Id. at

_____

[20]See Docket 263 at pp. 17-18.

p. 2 ¶ 2(b).   The request further argued count V, possession of a firearm while under indictment, is unconstitutional and violative of the Second Amendment. Id. at p. 3 ¶ 2(d).   The court must treat this last request as another motion to dismiss count V of the indictment.

On December 14, 2020, Mr. Flying Horse filed a motion for a furlough. (Docket 193).   Mr. Flying Horse wanted to attend his daughter's eye appointment, "visit family and take a plethora of accumulated 'legal work' and documents home."   Id. at p. 1.

On December 16, 2020, the government filed its response to defendant's fourteenth request.   (Docket 197).   The government treated the last part of Mr. Flying Horse's fourteenth request as a motion to dismiss count V.   Id. at p. 1.

On December 18, 2020, Mr. Flying Horse filed a reply brief in support of his sixth motion to dismiss.   (Docket 198) (referencing Docket 187).   The same day, Mr. Flying Horse filed another motion for return of items of personal property.   (Docket 199).   In this motion, Mr. Flying Horse seeks return of his "CZ, model 52, 7.62x25 caliber semi-automatic pistol, bearing serial number J05443" and the "CZ-52 magazine, with five 7.62x25 bullets," all of which were "seized on or about September 4, 2020, from the front passenger seat of a white Ford Expedition (SD License Plate No. 2Z0212), where it had been placed for its later retrieval by defendant, prior to his arrest on May 22, 2020."   Id. at   p. 1. According to Mr. Flying Horse the firearm was involved in the case of United

States v. Jesse Warbonnett, CR. 20-50132 (D.S.D. 2020).   Id. at p. 1 n.1; see also CR. 20-50132, Docket 1 at p. 1.

On January 4, 2021, Mr. Flying Horse filed a seventh motion to dismiss counts I and V.   (Docket 201).   This motion reasserted the same grounds argued in earlier motions.   Id. (referencing Docket 177).   On January 7, Mr. Flying Horse filed a motion for the contents of his *pro se* defendant binder. (Docket 203).

On January 25, 2021, Mr. Flying Horse filed a fifteenth request for judicial notice.[21]   (Docket 210).   On January 27, 2021, Mr. Flying Horse filed a motion for the return to Isiah Cross White of a Smith & Weston Model 586, .357 magnum revolver taken by law enforcement from Mr. Cross White.   (Docket 211).   On February 1, 2021, Mr. Flying Horse moved that a Luger, Model SR9, 9mm pistol seized from Lester Waters be returned to Mr. Flying Horse or his family.   (Docket 216).

On February 5, 2021, Mr. Flying Horse filed an eighth motion to dismiss counts I and V of the indictment.   (Docket 218).   This motion again argued for dismissal of the indictment because of the government's failure to prosecute the case.   Id. at p. 1.

On February 12, 2021, the defendant filed a motion for recusal of the magistrate judge.   (Docket 221).   Mr. Flying Horse asserted the magistrate judge failed or refused to rule upon his motions "although many . . . have gone

---

[21]See Docket 263 at pp. 18-19.

22

unopposed and unanswered."    Id. at p. 1 (emphasis omitted).    On February 18 and 19, 2021, Mr. Flying Horse filed his sixteenth[22] and eighteenth[23] requests for judicial notice.    (Dockets 222 & 223).

On February 22, 2021, the defendant filed a sixth motion for return of personal property.    (Docket 231).    In this motion, Mr. Flying Horse moved that $32,630 seized from Justin Edward Johnson be returned to Mr. Flying Horse or his family pursuant to a bill of sale executed by Mr. Johnson.    Id. at p. 1.    On the same day, defendant filed a motion for bail and a seventeenth request for judicial notice.[24]    (Dockets 232 & 233).

On June 3, 2021, Mr. Flying Horse filed a motion to dismiss the indictment, a motion to grant his unopposed motions, a second motion for recusal and his nineteenth request for judicial notice.[25]    (Dockets 250-53).    The motion to dismiss asserted the Speedy Trial Act and the Sixth Amendment warranted dismissal of the indictment because "more than 70-days have elapsed since the most newly indicted or arraigned, co-defendant was joined with the defendant . . . and yet he still has not been brought to trial."    Id. at p. 1

---

[22]See Docket 263 at p. 19.

[23]Defendant's seventeenth request for judicial notice was mailed on February 15, 2021, but not received by the Clerk's Office until February 22, 2021.    See Docket 233.

[24]See Docket 263 at pp. 19-20.

[25]See Docket 263 at p. 21.

(emphasis omitted).   Defendant's second motion for recusal sought removal of both the magistrate judge and this judge from his case.   (Docket 252).

On June 9, 2021, Mr. Flying Horse filed a notice of claim.   (Docket 255). By this notice the defendant sought reimbursement under the 1868 Fort Laramie Treaty and 28 U.S.C. §§ 1491 & 1495 for violating his constitutional rights in this prosecution.   Id. at p. 1.

On June 3, 2021, the government filed its response in resistance to the defendant's motion to dismiss.   (Docket 254).   Mr. Flying Horse filed a reply brief in support of his motion on June 11, 2021.   (Docket 256) (referencing 250).

B.   MAGISTRATE JUDGE'S R&Rs, ORDERS, DEFENDANT'S OBJECTIONS AND SUBSEQUENT MOTIONS

On July 21, 2021, the magistrate judge filed three R&Rs and four orders addressing defendant's motions to dismiss, motion to suppress, motion for sanctions and miscellaneous other motions.   (Dockets 258-59 & 262-66).   On July 26, 2021, the magistrate judge filed two additional orders denying defendant's request for appellate counsel and denying defendant's motions for recusal.   (Dockets 268-69).   On August 2, 2021, Mr. Flying Horse filed an objection to a R&R.   (Docket 271) (referencing Docket 258).

On August 6, 2021, the magistrate judge filed two more orders addressing issues raised in defendant's motions and related matters.   (Dockets 274-275). The magistrate judge appointed standby counsel to assist Mr. Flying Horse so he could have quicker access to discovery and filings in CM/ECF.   (Docket 275).

24

On August 9, 2021, Mr. Flying Horse filed an objection to another R&R. (Docket 277) (referencing Docket 259).   On August 13, 2021, he filed an objection to an order.   (Docket 280) (referencing Docket 261).   The July 21, 2021, order was subsequently withdrawn by the magistrate judge.   (Docket 261).   On August 18, 2021, the magistrate judge filed an amended order. (Docket 284).

While filing objections to the orders and R&Rs of the magistrate judge, on August 16, 2021, Mr. Flying Horse filed his tenth motion to dismiss the indictment.   (Docket 282).   On August 18, 2021, defendant filed a twentieth request for judicial notice.   (Docket 285).   On August 20, 2021, the government filed its brief in opposition to defendant's tenth motion to dismiss.   (Docket 286) (referencing Docket 282).

On August 25, 2021, Mr. Flying Horse filed an objection responding to another order.   (Docket 288) (referencing Docket 269).   On the same day, the magistrate judge filed an order denying defendant's twentieth request for judicial notice.   (Docket 289) (referencing Docket 285).

On August 30, 2021, Mr. Flying Horse filed an objection to the amended order.   (Docket 292) (referencing Docket 284).   He also filed a reply brief in support of his tenth motion to dismiss.   (Docket 293) (referencing Docket 282). On September 1, 2021, Mr. Flying Horse filed an objection to another order. (Docket 294) (referencing Docket 263).   On September 3, 2021, defendant filed an objection to another order.   (Docket 296) (referencing Docket 266).

On September 9, 2021, Mr. Flying Horse filed three documents.   The first was defendant's eleventh motion to dismiss counts I and V of the indictment. (Docket 297).   His second filing was a notice of invalidation of any documents filed by his former attorney or his current standby counsel.   (Docket 298).   The third filing was defendant's affidavit in support of his motion for the removal of Magistrate Judge Wollmann and this judge and defendant's motion for the appointment of a new judge.   (Docket 299).

On September 10, 2021, Mr. Flying Horse filed five documents.   The first was defendant's twelfth motion to dismiss counts I and V.   (Docket 301).   The second was a motion for a bill of particulars.   (Docket 302).   The third was a motion to remove his case to state court.   (Docket 303).   His fourth filing was a notice of foreign law, that is, the constitution of the State of South Dakota and its laws.   (Docket 304).   Mr. Flying Horse's fifth filing was his affidavit asserting his state court sentence had been completed, the state had restored his civil rights including the right to possess firearms under the Second Amendment.   (Docket 305).

On September 12, 2021, the government filed a motion for an extension of time to respond to defendant's eleventh motion to dismiss, twelfth motion to dismiss, motion for a bill of particulars and motion to remove defendant's case to state court.   (Docket 307) (referencing Dockets 297 & 301-02).   The basis for the government's motion was that counsel was beginning a month-long trial beginning the next week.   Id. at p. 1.   On September 13, 2021, the magistrate

judge granted the government's motion and required its responses to defendant's motions be filed by October 8, 2021.   (Docket 309).

On September 15, 2021, Mr. Flying Horse filed two objection to earlier orders issued by the magistrate judge.   (Dockets 311) (referencing Docket 289) and 312 (referencing Docket 265).   On September 27, 2021, defendant filed an objection to another order.   (Docket 313) (referencing Docket 309).

On September 29, 2021, defendant filed three documents with the court. The first was defendant's thirteenth motion to dismiss counts I and V.   (Docket 316).   The second filing was defendant's objection to an R&R.   (Docket 317) (referencing Docket 264).   The final filing that day was what Mr. Flying Horse titled his thirteenth request for judicial notice.   (Docket 319).   This was actually defendant's twenty-first request for judicial notice.   <u>Compare</u> Dockets 177, 285 & 319.

On September 30, 2021, the government filed two briefs in response to defendant's September motions.   (Dockets 320) (referencing Dockets 297, 301, 303 & 316) and 321 (referencing Docket 302).   The government's briefs were filed eight days prior to the deadline established by the magistrate judge. (Docket 309).

On October 8, 2021, Mr. Flying Horse filed an objection to another order of the magistrate judge.   (Docket 323) (referencing Docket 262).   On October 14, 2021, Mr. Flying Horse filed a reply brief in response to the government's September 30 briefs.   (Docket 324) (referencing Dockets 320 & 321).

27

On October 21, 2021, the magistrate judge filed a R&R on three motions to dismiss and defendant's motion to remove his case to state court.   (Docket 325) (referencing Dockets 297, 301, 303 & 316).   The same day, the magistrate judge filed three orders denying defendant's motions for change of judge, motion for a bill of particulars and defendant' thirteenth request for judicial notice.   (Dockets 326-328) (referencing Dockets 299, 302 & 319).

On October 21, 2021, in an effort to suspend Mr. Flying Horse's continuous barrage of filings, the court entered an order setting a pretrial conference hearing for January 21, 2022.   (Docket 331 at p. 2).   The order protected Mr. Flying Horse's right to file objections to the recent R&Rs and orders of the magistrate judge.   Id.   Based on the findings in the order, the court concluded that "any period of delay resulting from the continuance of this matter from the date of this order to the date of the pretrial conference is excludable delay pursuant to 18 U.S.C. §§ 3161(h)(1)(D), (1)(H) & (7)(A)."   Id.

On November 5, 2021, Mr. Flying Horse filed an objection to the order denying his motions for recusal of the magistrate judge.   (Docket 338) (referencing Docket 326).   On November 10, 2021, Mr. Flying Horse filed a motion for a 15-day extension of time to file additional objections.   (Docket 339). On November 12, 2021, finding good cause existed, the court granted defendant's motion for an extension of time.   (Docket 340).   Objections to the final three filings of the magistrate judge were due on or before November 23, 2021.   Id.   Applying the prison mailbox rule, the court finds Mr. Flying Horse

timely filed his final three objections on November 22, 2021, and November 29, 2021. (Dockets 342, 343 & 344) (referencing Dockets 329, 325 & 328 respectively).

C.   <u>RESOLUTION OF THE SPEEDY TRIAL ACT CLAIMS</u>

On August 12, 2020, the court canceled the trial date until the pending motions were resolved.   (Docket 87).   This was an "ends-of-justice" continuance under § 3161(h)(7)(A).   At that time, Mr. Flying Horse had six motions, three objections to magistrate judge's orders and five requests for judicial notice pending.   A subsection (h)(7)(A) tolling of the speedy trial clock is "an 'ends-of-justice' continuance: A trial may be delayed if a district court finds the ends of justice so require and 'sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.' "   <u>Adejumo</u>, 772 F.3d at 521 (quoting 18 U.S.C. § 3161(h)(7)(A)).

The court's order constituted an open-ended and *sua sponte* continuance, which starts a period of excludable time under the Act.[26]   <u>See</u> <u>United States v. Twitty</u>, 107 F.3d 1482, 1489 (11th Cir. 1997) ("An open-ended continuance may be granted to serve the ends of justice.").   <u>See</u> <u>also</u> <u>United States v. Wilson</u>, 216 F. Supp. 3d 566, 580 (E.D. Pa. 2016) ("The ['ends of justice'] continuance can

---

[26]Unique to this case, the order was entered during a time when the speedy trial clock was already stopped.   <u>See</u> Docket 63.

be open-ended, rather than for a specific period of time, but it must be . . .

granted prior to the days being excluded."); United States v. Santiago-Becerril,

130 F.3d 11, 17-18 (1st Cir. 1997) ("Open-ended continuances are not prohibited

*per se.*").

Some courts permitting open-ended continuances require the durations to

be "reasonable."   See, e.g., United States v. Clark, 717 F.3d 790, 823 (10th Cir.

2013).   In the Eleventh Circuit, however, "[i]f the trial court determines that the

'ends of justice' require the grant of a continuance, and makes the required

findings, *any* period of delay is excludable under [the Act.]"   Twitty, 107 F.3d at

1489 (emphasis in original); United States v. Hill, 487 Fed. Appx. 560, 562 (11th

Cir. 2012) (citing this holding from Twitty).   The text of the statute mirrors the

Eleventh Circuit's reasoning, providing for the exclusion of "*[a]ny* period of delay

resulting from a continuance granted by any judge on his own motion . . . if the

judge granted such continuance on the basis of his findings that the ends of

justice" are served.   18 U.S.C. § 3161(h)(7)(A) (emphasis added).

The Act requires a court to accompany an "ends of justice" continuance

with specific findings.   See id.   "No such period of delay resulting from a

continuance granted by the court in accordance with this paragraph shall be

excludable under this subsection unless the court sets forth, in the record of the

case, either orally or in writing, its reasons for finding that the ends of justice

served by the granting of such continuance outweigh the best interests of the

public and the defendant in a speedy trial."   Id.   "Although the Act is clear that

30

the findings must be made, if only in the judge's mind, before granting the continuance . . . the Act is ambiguous on precisely when those findings must be set forth in the record of the case." Zedner v. United States, 547 U.S. 489, 506-07 (2006) (internal quotation marks and alteration omitted); Adejumo, 772 F.3d at 522.   "At the very least the Act implies that those findings must be put on the record by the time a district court rules on a defendant's motion to dismiss . . . ." Zedner, 547 U.S. at 507.   Courts are "not required to make a contemporaneous record of [their] ends-of-justice findings." Adejumo, 772 F.3d at 522 (noting that "a subsequent articulation suffices[. ]").   For those reasons, the ends of justice served by granting an open-ended, *sua sponte* continuance outweigh the best interest of the public and the defendant in a speedy trial. 18 U.S.C. § 3161(h)(7)(A).

Rather than suspending the filing of motions, objections and requests for judicial notice based on the clear intent of the August 12, 2020, order, Mr. Flying Horse continued his barrage of filings.   From August 13, 2020, through June 11, 2021, Mr. Flying Horse filed 22 additional motions, 12 requests for judicial notice, 10 briefs and one notice.   Defendant's filings required the government to seek extensions of time and to file responsive briefs.   To develop a complete record, the magistrate judge was compelled to consider both parties' motions for continuances of briefing and to issue orders allowing extensions to both parties.

Mr. Flying Horse may argue his "earlier motions" were not resolved within the time period established by § 3161(h)(1)(H) so the speedy trial clock expired

and the indictment as it relates to him must be dismissed.   (Docket 250).

Defendant's reliance on subsection (h)(1)(H) is misplaced.   Subsection (h)(1)(H)

contemplates that only 30 days may be excluded while a motion "is actually

under advisement by the court."   18 U.S.C. § 3161(h)(1)(H).   "The only time

subsection H comes into play is when the speedy trial clock is running."   United

States v. Massat, CR. 15-50089, 2016 WL 4098566, at *3 (D.S.D. July 28, 2016).

Because the speedy trial clock was stopped by virtue of the August 12,

2020, order (Docket 87) and the barrage of filings by Mr. Flying Horse which

subsequently saturated the record, the court's resolution of defendant's

objections to the reports and recommendations and magistrate judge's orders in

this order "were filed during a period the speedy trial clock was stopped."

Massat, 2016 WL 4098566, at *3.   "It is only after the speedy trial clock would

have restarted that § 3161(h)(1)(H) and the 30-day period for the court to resolve

those motions would have come into play."   Id.

The fact that several months lapsed between the filing of defendant's

earliest motions and entry of the court's order does not change the analysis

under the STA.   See Twitty, 107 F.3d at 1489 ("If the trial court determines that

the 'ends of justice' require the grant of a continuance, and makes the required

findings, _any_ period of delay is excludable under [the Act.]") (emphasis in

original).   Even if the Act required the open-ended continuance to be reasonable

in duration, the court concludes the resulting exclusion of days is reasonable

based on the findings above.   See United States v. Green, 516 Fed. Appx. 113,

122-23 (3d Cir. 2013) (permitting a 16-month open-ended continuance).

32

Under the Act there are 70 days remaining for trial.   See Exhibit A attached to this order.   The Speedy Trial Act has not been violated.   For the reasons stated above Mr. Flying Horse has not sustained his burden to show the motions to dismiss pursuant to the STA should be granted.   Adejumo, 772 F.3d at 521.   Defendant's motions to dismiss on this basis are denied.

### III.   SIXTH AMENDMENT

"Sixth Amendment and Speedy Trial Act challenges for delay are reviewed independently of one another."   United States v. Williams, 557 F.3d 943, 948 (8th Cir. 2009) (citation and internal quotation marks omitted).   "As to the separate Sixth Amendment speedy trial claim, [the United States Court of Appeals for the Eighth Circuit] stated that '[i]t would be unusual to find the Sixth Amendment has been violated when the Speedy Trial Act has not.' "   Shepard, 462 F.3d at 864 (quoting Titlbach, 339 F.3d at 699).   A defendant's Sixth Amendment right to a speedy trial " 'attaches at the time of arrest or indictment, whichever comes first, and continues until the trial commences.' "   United States v. Erenas-Luna, 560 F.3d 772, 776 (8th Cir. 2009) (quoting United States v. McGhee, 532 F.3d 733, 739 (8th Cir. 2008)).   The Sixth Amendment does not specify a time limit in which an accused must be brought to trial.   See U.S. Const. amend. VI.

Because of the "vague" nature of the Sixth Amendment right, "any inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case."   Barker v. Wingo, 407 U.S. 514, 522 (1972).   To

33

assist courts in evaluating speedy trial claims, the <u>Barker</u> Court established a four-factor balancing test "in which the conduct of both the prosecution and the defendant are weighed." <u>Id.</u> at 530. These factors are (1) the length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of his right to speedy trial and (4) the prejudice to the defendant. <u>Id.</u>

A.   <u>LENGTH OF DELAY</u>

Because the "length of the delay is to some extent a triggering mechanism," courts need not inquire into the remaining factors "[u]ntil there is some delay which is presumptively prejudicial[.]" <u>Id.</u> "To trigger speedy trial analysis, the defendant must allege the interval between accusation and trial has crossed a line dividing ordinary from presumptively prejudicial delay." <u>Mallett</u>, 751 F.3d at 913 (internal quotation marks omitted).

Defendant was indicted on June 11, 2020. (Docket 26). His initial appearance on the indictment occurred on June 17, 2020. (Docket 29). Trial has yet to occur, so the delay has been over 18 months. That is presumptively prejudicial. <u>See Mallett</u>, 751 F.3d at 913-14 (finding 17 months presumptively prejudicial). This factor weighs in defendant's favor.

B.   <u>REASONS FOR DELAY</u>

The court must "consider the reasons for the delay and evaluate whether the government or the criminal defendant is more to blame." <u>Mallett</u>, 751 F.3d at 914 (internal quotation marks omitted). The record does not demonstrate government negligence caused the delay in this case. <u>See United States v.</u>

34

Rodriguez-Valencia, 753 F.3d 801, 806-07 (8th Cir. 2014) (discussing what may constitute government negligence).   Defendant shoulders the "blame" based on the nonstop motions he filed which compelled to the court to spend considerable time resolving defendant's substantive motions.   See Mallett, 751 F.3d at 914; cf. McGhee, 532 F.3d at 739 (finding no constitutional violation in a 915-day delay and the defendant mostly responsible for the delay because he "moved for two continuances, a mental competency evaluation, an emergency hearing to withdraw his request for determination of mental competency, and to dismiss the indictment[. ]").   The court finds this factor weighs heavily against defendant.

C.   ASSERTION OF SPEEDY TRIAL RIGHT

Defendant repeatedly asserted his speedy trial right.   (Dockets 97 at p. 1; 250 at p. 1 & 282 at p. 1).   However, defendant's "substantial contributions to the pretrial delay belie his . . . attempts to assert his speedy trial rights." Mallett, 751 F.3d at 914.   The court finds this factor weighs against defendant.

D.   PREJUDICE

"Finally, the court must consider whether the delay prejudiced [defendant].   In doing so, the court should assess the interests served by the speedy trial right, which are '(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.' "   United States v. Sims, 847 F.3d 630, 636 (8th Cir. 2017) (quoting Barker, 407 U.S. at 532).   "A showing of actual

prejudice is required if the government exercised reasonable diligence in pursuing the defendant." Erenas-Luna, 560 F.3d at 778-79. "Where the government has been negligent, however, prejudice can be presumed if there has been an excessive delay." Id. "Whether or not a showing of prejudice is required in every case, [the Eighth Circuit has] been clear that the degree of prejudice required, if any, depends on the defendant's showing under the preceding Barker factors." Sims, 847 F.3d at 636. The court does not presume this case's delay prejudiced defendant because the record does not establish the government has been negligent and the court finds the government has been reasonably diligent. See Erenas-Luna, 560 F.3d at 778-79. As a result, defendant must show actual prejudice "under the preceding Barker factors." Sims, 847 F.3d at 636.

Defendant does not demonstrate actual prejudice. On this issue, defendant merely highlights his pretrial detention. This assertion is not enough to support a claim of actual prejudice. Of the three interests listed above, "prejudice to the last is the most serious . . . because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." Erenas-Luna, 560 F.3d at 778 (internal quotation marks omitted). Defendant presents no claim of actual prejudice. This is "insufficient, without more, to satisfy his burden." See id.; see also Young v. United States, 953 F. Supp. 2d 1049, 1064 (D.S.D. 2013) ("The delay did not limit his defense. Young, for example, has not even attempted to identify witnesses helpful to his defense who

36

became unavailable due to the delay.").   The court finds this factor weighs

against defendant.

E.      RESOLUTION OF THE SIXTH AMENDMENT CLAIMS

        Although the duration of this case is presumptively prejudicial, the other

Barker factors analysis support finding no Sixth Amendment violation.   The

court denies defendant's motion to dismiss the indictment based on a violation of

his Sixth Amendment right to a speedy trial.

        Mr. Flying Horse also claims dismissal is justified based on a violation of

his Fifth Amendment right to due process.   (Docket 147 at p. 1 & 1 n.3).   But

that claim is focused on his belief the magistrate judge improperly granted a

government continuance to file a responsive brief.   Id.   Mr. Flying Horse does

not raise a credible Fifth Amendment claim.

## IV.  DEFENDANT'S OBJECTIONS TO REPORTS
## AND RECOMMENDATIONS

        Having addressed defendant's speedy trial claims, the court addresses

each of Mr. Flying Horse's objections to the magistrate judge's R&Rs.   Under the

Federal Magistrate Act, 28 U.S.C. § 636(b)(1), if a party files written objections to

the magistrate judge's proposed findings and recommendations, the district

court is required to "make a de novo determination of those portions of the report

or specified proposed findings or recommendations to which objection is made."

Id.   The court may "accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge."   Id.   See also Fed. R. Crim. P.

59(b)(3).

A.   OBJECTION TO DOCUMENT 258

Mr. Flying Horse filed an objection to the magistrate judge's R&R recommending the court deny defendant's motions for entry of default and motion to grant unopposed motions.   (Docket 271) (referencing Docket 258).

Defendant's first objection contends the magistrate judge was biased in favor of the government by permitting the prosecution to file an untimely response to defendant's motion to dismiss.   Id.   As explained above, the court found the magistrate judge's order was premised on good cause shown by the government.   See supra at p. 8 n.3.   By granting an extension, the magistrate judge's order made the government's motion timely.   See Docket 61.   The magistrate judge did not take on the role of a prosecutor or show bias. Defendant's first objection is overruled.

Mr. Flying Horse's second objection is that the magistrate judge improperly denied, without authority to do so, defendant's request for entry of default against the government.   (Docket 271 at p. 2).   Defendant misinterprets the magistrate judge's finding.   Pursuant to 28 U.S.C. § 636(b)(1), the magistrate judge recommended to the district court that defendant's request for entry of default be denied.   (Docket 258 at p. 4).   This is a proper method by which to notify the district court of the recommendation.   Defendant's second objection is overruled.

Defendant's objections, Docket 271, are overruled.   The court adopts the R&R in its entirety.   (Docket 258).   Defendant's motions (Dockets 56, 64 & 251) are denied.

B.   OBJECTIONS TO DOCUMENT 259

Mr. Flying Horse filed an objection to the magistrate judge's R&R recommending the court deny defendant's motion to suppress.   (Docket 277) (referencing Docket 259).

Defendant's first objection contends the magistrate judge was biased in favor of the government by raising an issue Mr. Flying Horse claims was neither raised by his motion to suppress nor the government's responsive brief.   Id. at p. 1.   The court finds the magistrate judge properly addressed the issue raised by defendant's motion to suppress and did not take on the role of a prosecutor or show bias against the defendant.   Defendant's first objection is overruled.

Defendant's second objection is the government's responsive brief failed to cite legal authority in support of its argument.   Id. at p. 2.   Defendant's objection is without merit.   See Docket 82 at pp. 3-5.   Defendant's second objection is overruled.

Defendant's objections, Docket 277, are overruled.   The court adopts the R&R (Docket 259) in its entirety.   Defendant's motion to suppress (Docket 65) is denied.

C.    <u>OBJECTION TO DOCUMENT 261</u>

Defendant filed an objection to the R&R addressing defendant's motions to strike and other matters.   (Docket 280) (referencing Docket 261).   The magistrate judge subsequently withdrew the R&R and noted it was "filed in error."  (Docket 261) (CM/ECF entry; capitalization omitted).   Defendant's objection (Docket 280) is denied as moot.

D.    <u>OBJECTIONS TO DOCUMENT 264</u>

Mr. Flying Horse filed an objection to the magistrate judge's R&R recommending the court deny defendant's first, second, third, fourth, fifth, sixth, seventh, eighth and ninth motions to dismiss.   (Docket 317) (referencing Docket 264).

Defendant's first objection contends the magistrate judge was biased in favor of the government by recommending resolution of the seventh and eighth motions to dismiss without a brief in opposition being filed by the government. <u>Id.</u> at p. 1.   The defendant's seventh motion to dismiss is premised on his thirteenth request for judicial notice.   (Docket 264 at p. 13) (referencing Docket 177).   The magistrate judge found defendant's request for judicial notice was "not a motion which would require a responsive filing under [D.S.D. Crim LR] 47.1" <u>Id.</u>

The government was under no obligation to respond to defendant's requests for judicial notice.   That being said, the government's failure to respond does not prove the court had no jurisdiction over Mr. Flying Horse. Addressing the merits of defendant's seventh motion to dismiss, the magistrate

judge did not show bias in favor of the government or prejudice toward the defendant.

Defendant's first objection is overruled.

Defendant's objection to the handling of the eighth motion to dismiss asserts the magistrate judge blatantly misrepresented his argument.   (Docket 317 at pp. 2-3).   The magistrate judge found Mr. Flying Horse cited "civil cases" as opposed to criminal cases.   (Docket 264 at p. 14).   Mr. Flying Horse contends that is wrong because he cited a criminal case, <u>United Staes v. Ngo Tra</u>, 1994 U.S. Dist. LEXIS 7451 * 3 (E.D. La 1994).[27]   (Docket 317 at p. 3).

Mr. Flying Horse is mistaken.   While the government was the plaintiff in <u>Tra</u>, the action was a civil case "to enforce a civil penalty administratively assessed by the Secretary of Commerce."   <u>Tra</u>, 1994 WL 247174, *1.   The magistrate properly considered, then rejected defendant's argument and the comment by the magistrate judge does not show or express bias for the government or prejudice against the defendant.

Defendant's second objection is overruled.

Defendant's third objection is that the magistrate judge improperly argued for the government that the personal jurisdiction requirement only applies to the court.   (Docket 317 at p. 4).   In support of this objection, Mr. Flying Horse references civil cases which place the burden on a plaintiff to establish a federal court's limited jurisdiction.   <u>Id.</u> at p. 5.   That argument is flawed, however,

_____

[27]The court researches in Westlaw and the citation of this case is <u>United States v. Tra</u>, Civ. A. No. 92-1516, 1994 WL 247174 (E.D. La. June 1, 1994).

41

when addressing the court's criminal jurisdiction.   As the magistrate judge
accurately stated, a sovereign citizen claim like that posed by Mr. Flying Horse is
"completely without merit, patently frivolous, and . . . rejected without expending
any more of this Court's resources . . . ."   (Docket 264 at p. 3) (citing United
States v. Jagim, 978 F.2d 1032, 1036 (8th Cir. 1992)).   Mr. Flying Horse's
sovereign citizen claim is frivolous and without merit.

Defendant's third objection is overruled.

Defendant's fourth objection is that the magistrate judge incorrectly
concluded the charges against him allegedly occurred in the state of South
Dakota and not in the district of South Dakota.   (Docket 317 at p. 6).   Because
of this purported error, Mr. Flying Horse asserts he is entitled to an acquittal.
Id.

Defendant's fourth objection is without merit.   The district of South
Dakota encompasses all of the state of South Dakota.   A federal offense
committed in the state of South Dakota is committed in the district of South
Dakota.

Defendant's fourth objection is overruled.

Defendant's fifth objection to the R&R is that he was not under
"indictment" on April 19 and 21 of 2020, during which an individual would be
prohibited from possessing a firearm.   Id. at p. 6.   In support of this objection,
Mr. Flying Horse filed a copy of a state court complaint dated March 9, 2020.   Id.

42

(referencing Docket 150-1).   He asserts this complaint "has not been filed in state court."   Id.

Whether Mr. Flying Horse has a factual defense to the charge in count V of the indictment is not before the court.   Any factual issue must be resolved by a trial jury.   The magistrate judge analyzed the legal issue of whether a complaint constitutes an indictment for purposes of 18 U.S.C. § 922.   (Docket 264 at p. 7). The analysis in the R&R accurately sets forth the law.

Mr. Flying Horse's fifth objection is overruled.

Defendant's sixth objection is that the magistrate judge improperly analyzed the Speedy Trial Act and his rights under the Sixth Amendment. (Docket 317 at p. 7) (referencing Docket 264 at pp. 15-19).   He again asserts the magistrate judge failed to address defendant's claim that the government's brief did not cite legal authority.   Id. (referencing Docket 254).   Defendant's objection is without merit.   See Docket 254.

The court resolved defendant's STA and Sixth Amendment claims earlier in this order.   See supra, at pp. 32 & 36.   The magistrate judge's analysis is consistent with the court's conclusions.

Before leaving defendant's objections to Docket 264, the court finds the magistrate judge improperly found the third Barker factor weighed in defendant's favor.   The court found that although Mr. Flying Horse asserted his right to a speedy trial, that argument claim was outweighed by the barrage of motions and other documents filed by the defendant.   See supra at p. 34-35.

43

The R&R is amended to state the third <u>Barker</u> factor weighed against the defendant.

Defendant's objections (Docket 317) are overruled.   The court adopts the R&R Docket 264) as amended in this order.   Defendant's motions to dismiss (Dockets 51, 97, 147, 148, 179, 187, 201, 218 & 250) are denied.

E.   <u>OBJECTION TO DOCUMENT 325</u>

Mr. Flying Horse filed an objection to the magistrate judge's R&R recommending the court deny defendant's eleventh, twelfth and thirteenth motions to dismiss and his motion to remove the case to state court.   (Docket 343) (referencing Docket 325).   Defendant's objection contends the magistrate judge was biased in favor of the government by recommending resolution of the three motions to dismiss without requiring the government's brief to cite supporting legal authority.   <u>Id.</u> at pp. 1-2.   The objection is without merit as the government's argument was supported by case authority.   <u>See</u> Docket 320 at pp. 1-2.

The thirteenth motion again challenges the earlier R&R in which defendant claims the magistrate judge incorrectly concluded the charges against him allegedly occurred in the state of South Dakota and not in the District of South Dakota.   (Docket 316).   This argument was foreclosed earlier in this order.   <u>See</u> <u>supra</u> at pp. 41-42.   No further legal authority need be referenced by the government to again permit the magistrate judge to reject defendant's frivolous and meritless argument.

44

Defendant's objection (Docket 343) is overruled.   The court adopts the R&R (Docket 325) in its entirety.   Defendant's motions to dismiss (Dockets 297, 301 & 316) and his motion to remove the case to state court (Docket 303) are denied.

## V.   DEFENDANT'S OBJECTIONS TO ORDERS

When addressing a defendant's objections to an order of a magistrate judge, the court employs a different standard of review.   The Federal Magistrate Act directs that if a party objects to an order on any pretrial matter, "the court may reconsider . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."   28 U.S.C. § 636(b)(1)(A).

A.   OBJECTIONS TO DOCUMENT 262

Defendant first objects to an order of the magistrate judge denying his motion for sanctions.   (Docket 323) (referencing Docket 266).   After analyzing the parties' submissions, the magistrate judge denied defendant's motion.   Id. at p. 4.   In his objections to this order, Mr. Flying Horse reargued the positions he advanced in support of the original motion.   Compare Dockets 98 & 323 at pp. 1-2.   Mr. Flying Horse claims the magistrate judge *sua sponte* improperly adopted a position not taken by the government.   Id. at p. 2.   The view taken by the magistrate judge was that "[d]ocuments are routinely e-signed and filed remotely.   The fact that the Defendant received a letter from Mr. Patterson on July 27, 2020[,] does not conclusively establish Mr. Patterson was in the office on that date."   Id. at p. 2 (referencing Docket 262 at p. 3).   Mr. Flying Horse argues

45

because he received postage meter stamped envelopes from the Office of the United States Attorney on days Mr. Patterson represented to the court that he was out of the office, this established the government's intentional fraudulent conduct.   Id.

Defendant's argument is without merit.   The court notes it is not uncommon for attorneys to mail letters which were e-mailed to support staff and then placed on letterhead stationery for mailing.   This practice is common with a defendant in jail because the defendant may not have access to e-mail.   The magistrate judge did not overstep the boundaries of her judicial independence and become a prosecutor.

Defendant's second objection claims the magistrate judge improperly determined his motion for sanctions was moot.   Id. at p. 4.   Defendant argues the government filed false charges against him.   Id.   The court agrees with the magistrate judge's conclusion that such a claim is moot once a grand jury independently indicts a defendant.

The court reviewed the magistrate judge's order denying defendant's motions and finds no error, clear or otherwise, and the order is not contrary to law.   28 U.S.C. § 636(b)(1)(A).   Defendant's objections (Docket 323) are overruled.   The court affirms the magistrate judge's order.   (Docket 262).

B.   OBJECTIONS TO DOCUMENT 263

Defendant objects to the magistrate judge's order resolving defendant's first 19 requests for judicial notice.   (Docket 294) (referencing Docket 263).

46

After analyzing each of the defendant's requests the magistrate judge filed an order denying all 19 requests for judicial notice.[28]   (Docket 263 at pp. 21-22).

Defendant's objection advances the same argument presented in earlier objections, that is, the magistrate judge showed actual bias.   (Docket 294 at p. 1).   He asserts the government failed to file any responsive brief or other argument opposing defendant's requests for judicial notice, except for the 14th request.   Id. (referencing Docket 197).   Mr. Flying Horse argues the magistrate judge *sua sponte* independently performed an analysis which the government did not present.   Defendant claims this process violated his due process rights.   Id. at p. 2.

The court finds the magistrate judge did a comprehensive analysis of each of defendant's requests for judicial notice.   (Docket 263 at pp. 4-21).   This is the independent judicial examination the court would expect, with or without the government's arguments.   Simply because a defendant files a request for judicial notice does not mean the court must accept the contents of the request when the government does not file a response.   Most of Mr. Flying Horse's requests for judicial notice are more properly classified as his written submission in support of the numerous motions filed.

The court reviewed the magistrate judge's order denying defendant's requests for judicial notice and finds no error, clear or otherwise, and the order is not contrary to law.   28 U.S.C. § 636(b)(1)(A).   Defendant's objections (Docket

---

[28]Docket 78 is a duplicate of Docket 76.

294) are overruled.   The court affirms the magistrate judge's order.   (Docket 263).

C.   <u>OBJECTIONS TO DOCUMENT 265</u>

Defendant objects to the magistrate judge's order resolving defendant's seven motions for the return of various items of personal property.   (Docket 311) (referencing Docket 265).   The magistrate judge's order denied defendant's motions for the return of one vehicle, two cell phones, miscellaneous tools, five firearms, ammunition and $32,630 in cash.   (Docket 265).

Mr. Flying Horse again advances the same objection that the magistrate judge *sua sponte* initiated arguments not made by the government and this conduct violated his due process rights.   (Docket 311 at pp. 1-2).   Defendant's argument fails to acknowledge that the government filed a brief on the first motion indicating there was no vehicle seized by the United States as part of these proceedings.   (Docket 265) (referencing (Docket 96).   In addition, Mr. Flying Horse acknowledged in his own motions that a number of the items he requested were being held as evidence in criminal cases against other defendants.   <u>Id.</u> at pp. 3-7.

A court examining a defendant's motions for delivery of property being held in other criminal cases involving other named individuals does not need argument of government counsel when the motions are frivolous.   The court reviewed the magistrate judge's analysis and does not find any bias, implied or actual.   Defendant's first objection is overruled.

48

Defendant's second objection claims the magistrate judge "should have afforded [him] an opportunity to assert an alternative claim for damages[.]" (Docket 311 at p. 2).   The case authority cited by Mr. Flying Horse is not applicable to the undisputed facts acknowledged by the defendant, that is the items of personal property are being held as evidence in other criminal cases. Defendant's objection is without merit and is overruled.

Defendant's third objection contends the magistrate judge unconstitutionally infringed on his Second Amendment rights.   Id. at p. 3.   Mr. Flying Horse asserts his Second Amendment rights were "re-stored . . . on May 31, 2019."   Id. (referencing Docket 305).   Defendant represents he received from the South Dakota Department of Correction ("SDDOC") a certificate issued pursuant to SDCL § 24-15A-7 which stated "the inmate shall at the time of discharge be considered as restored to the full rights of citizenship."   (Docket 305) (emphasis omitted).   With this submission, Mr. Flying Horse asserts the magistrate judge incorrectly concluded he is prohibited from the lawful possession of firearms.   (Docket 311 at p. 3) (referencing Docket 265 at p. 4).

Mr. Flying Horse's objection is misplaced.   Restoration of one's civil rights following completion of a state imposed felony sentence does not automatically restore the individual's civil rights under federal law.   Beecham v. United States, 511 U.S. 368, 374 (1994).   "In order for a conviction to be excludable under § 921(a)(20), the record must show effective and actual restoration of the right to possess firearms."   United States v. Sonczalla, 561 F.3d 842, 844 (8th Cir.

2009).   "[O]verlapping firearm prohibitions may prevent the effective and actual restoration of that right."   Id.

Whether Mr. Flying Horse was restored to all his civil rights is unclear as the SDDOC certificate is not of record.   But for purposes of this analysis, what remains clear is that as of March 9, 2020, he was under indictment in the state court.   See supra at p. 42.   As of that date, he would be prohibited from possessing a firearm or ammunition.   18 U.S.C. § 922(n).

If the magistrate judge was mistaken and Mr. Flying Horse was not prohibited from possessing a firearm based on his prior three state felonies, he was still under indictment as of the date of the magistrate judge's order.   That status would be a barrier to his lawful possession, whether actual or constructive, of the firearms he seeks to obtain by the current motions.

The court reviewed the magistrate judge's order denying defendant's seven motions for return of property and finds no error, clear or otherwise, and the order is not contrary to law.   28 U.S.C. § 636(b)(1)(A).   Defendant's objections (Docket 311) are overruled.   The court affirms the magistrate judge's order (Docket 265) as modified by this order.

D.   OBJECTIONS TO DOCUMENT 266

Defendant objects to the magistrate judge's order resolving defendant's motion for a detention hearing, motion for a furlough and motion for bail. (Docket 296) (referencing Docket 266).   The magistrate judge denied all three

50

motions and made detailed findings supporting the conclusion Mr. Flying Horse remained a danger to the community and a flight risk.   (Docket 266 at   pp. 3-7).

Defendant's first objection asserts the magistrate judge lacked the authority to act on his motions.   (Docket 296 at p. 1).   He claims there is no "procedural mechanism" for the magistrate judge to rule on the motions.   Id.

Mr. Flying Horse's first objection is without merit.   Title 18 of the United States Code § 3142 gives specific authority to the court to review a defendant's detention status:

> ]A]t any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

Id., § 3142(f)(2)(B).   Pursuant to 26 U.S.C. § 636(b)(1)(A) and a Standing Order dated April 1, 2018, the court granted authority to Magistrate Judge Daneta Wollmann "to hear and determine any pretrial matter pending before the Court[.]"[29]   This grant of authority included the ability to conduct pretrial detention hearings, motions for reconsideration of pretrial release and furlough motions.   The magistrate judge's authority was renewed and extended by Standing Order 21-09 dated August 11, 2021.[30]   Defendant's first objection is overruled.

---

[29]The April 1, 2018, Standing Order can be found at: https://www.sdd. uscourts.gov/content/designation-jurisdiction-united-states-magistrate-judge-district-south-dakota-western.

Defendant's second objection is the magistrate judge showed bias against him by *sua sponte* developing a record on the claims presented by the motions to change his detention status.   (Docket 296 at p. 2).   Even though the government did not respond to Mr. Flying Horse's motions, the magistrate judge was duty bound to determine whether the defendant was entitled to be released pending trial or whether he constituted a flight risk or a danger to the community and should be detained until trial.   18 U.S.C. § 3142.

As part of the basis for the order denying defendant's motions, the magistrate judge placed in the record a detailed summary of the factors upon which the denial of change of custody status was made.   (Docket 266 at pp. 4-7). The magistrate judge did not go outside the record made at the preliminary hearing held on June 3, 2020.   Id. at p. 5.   At the hearing, Mr. Flying Horse was given the opportunity to cross-examine the Special Agent of the Bureau of Alcohol, Tobacco and Firearms and to present any additional evidence the defendant may have considered pertinent to the issue of pretrial release. Defendant's second objection is overruled.

The court reviewed the magistrate judge's order denying Mr. Flying Horse's three motions and finds no error, clear or otherwise, and the order is not contrary to law.   28 U.S.C. § 636(b)(1)(A).   Defendant's objections (Docket 296) are overruled.   The court affirms the magistrate judge's order.   (Docket 266).

---

[30]Standing Order 21-09 can be found at: https://www.sdd.uscourts.gov/ content/designation-jurisdiction-united-states-magistrate-judge-district-south-dakota-western-0.

E.    OBJECTIONS TO DOCUMENT 269

Mr. Flying Horse objects to the magistrate judge's order denying the defendant's two motions for recusal.   (Docket 288) (referencing Docket 269). Mr. Flying Horse's complaint against the magistrate judge is premised on her failure or refusal to timely rule on his previous motions.   (Docket 269 at p. 1) (referencing Dockets 221 & 252).

In his objection, Mr. Flying Horse first asserts the magistrate judge repeatedly displayed bias by *sua sponte* advancing arguments not submitted by the government.   (Docket 288 at p. 1).   This is the same argument made by the defendant in earlier motions before the court.   In every instance, the court rejected defendant's argument.   For the same reasons stated earlier in this order, the court overrules the defendant's objection.   Mr. Flying Horse's motions presented no credible evidence of an appearance of bias on the part of the magistrate judge which would interfere with the judicial independence necessary to resolve defendant's motions.   See Dockets 221 & 252.   The court finds Mr. Flying Horse failed to articulate any objective facts upon which Magistrate Judge Wollmann would be compelled to disqualify herself from defendant's case or upon which his motions for recusal should be granted.

The court finds no error, clear or otherwise, and the magistrate judge's order is not contrary to law.   28 U.S.C. § 636(b)(1)(A).   Defendant's objections (Docket 288) are overruled.   The court affirms the magistrate judge's order. (Docket 269).

53

In his second motion for recusal, Mr. Flying Horse not only seeks the removal of the magistrate judge but the removal of this federal district judge. (Docket 252 at p. 1).   While the magistrate judge had the authority to determine whether to grant defendant's motions for recusal of the magistrate judge, the magistrate judge had no authority to address a recusal motion directed to a district court judge.   The authority to resolve that motion remains with this court.   28 U.S.C. § 455(a).

Based on Mr. Flying Horse's motion and subsequent affidavit (Docket 299), he fails to articulate any objective facts upon which this court would be compelled to disqualify itself from defendant's case or upon which his motion for recusal should be granted.   Id.; United States v. Denton, 434 F.3d 1104, 1111 (8th Cir. 2006).

Defendant's motion for recusal (Docket 252) as it relates to this district court judge is denied.

F.   OBJECTIONS TO DOCUMENT 326

Defendant's objection focuses on the magistrate judge's second order denying defendant's motion for recusal based upon his affidavit for a change of judge.   (Docket 338) (referencing Docket 326).

An affidavit is not an independent filing which must be considered a motion for purposes of 28 U.S.C. § 636.   The court finds the affidavit was intended by Mr. Flying Horse to relate back to his earlier objection (Docket 288) to the magistrate judge's order denying the first two motions for recusal.

54

(Docket 269).   Because the court already denied the defendant's objection to the earlier order, the affidavit adds nothing to the analysis and does not change the outcome of defendant's motions.

The court finds no error, clear or otherwise, and the magistrate judge's order is not contrary to law.   28 U.S.C. § 636(b)(1)(A).   Defendant's objections (Docket 338) are overruled.   The court affirms the magistrate judge's order (Docket 326).

To the extent Mr. Flying Horse's affidavit was intended to address defendant's motion for recusal of this district court judge (Docket 252), the court finds the affidavit fails to articulate any objective facts upon which recusal is appropriate.   Defendant's effort to revitalize his motion for recusal   through the use of the affidavit (Docket 252) is denied.

G.   OBJECTION TO DOCUMENT 328

Defendant's objection focuses on the magistrate judge's order denying Mr. Flying Horse's motion for a bill of particulars.   (Docket 344) (referencing Docket 328).   Defendant's sole objection to the order is his claim the magistrate judge showed bias in favor of the government and against Mr. Flying Horse in denying the motion for a bill of particulars.   Id. at pp. 1-2.   This objection has been rejected a number of times earlier in this order.   To simply reargue this claim in every objection does not make the claim stronger.   For the same reasons stated earlier in this order, the court rejects the defendant's argument.   Mr. Flying Horse presents no credible evidence of bias on the part of the magistrate judge

which would interfere with the judicial independence required to resolve defendant's motion.

The court reviewed the magistrate judge's order denying defendant's motion for a bill of particulars and finds no error, clear or otherwise, and the order is not contrary to law.   28 U.S.C. § 636(b)(1)(A).   Defendant's objection (Docket 344) is overruled.   The court affirms the magistrate judge's order. (Docket 328).

H.   OBJECTION TO DOCUMENT 329

Defendant's objection focuses on the magistrate judge's order denying Mr. Flying Horse's twenty-first request for judicial notice.[31]   (Docket 342) (referencing Docket 329).   Defendant's sole objection to the order is the magistrate judge showed bias in favor of the government and against Mr. Flying Horse in denying the request for judicial notice.   Id. at pp. 1-3.

The magistrate judge properly found that "Mr. Flying Horse asks the court to take judicial notice of legal conclusions or arguments."   (Docket 329 at p. 3. The court agrees with and adopts the magistrate judge's determination.   This request for judicial notice, like defendant's prior requests, is merely his brief in support of a legal position.   The court is free to reach its own conclusions as to the authority of the case law cited by a party.

The court reviewed the magistrate judge's order denying the twenty-first request for judicial notice and finds no error, clear or otherwise, and the order is

_____

[31]Defendant's request for judicial notice was mistakenly captioned as his thirteenth request.   See Docket 319 at p. 1.

not contrary to law.   28 U.S.C. § 636(b)(1)(A).   Defendant's objection (Docket 342) is overruled.   The court affirms the magistrate judge's order.   (Docket 329).

## VI.   TENTH MOTION TO DISMISS

The tenth motion to dismiss is again premised on defendant's claim this prosecution violates his Speedy Trial Act rights and his rights under the Sixth Amendment.   (Docket 282).   Because the court intended to address Mr. Flying Horse's earlier motions to dismiss for violating the Speedy Trial Act and the Sixth Amendment, the magistrate judge was advised to not address the current motion.   Rather, the tenth motion to dismiss would be evaluated in light of the court's rulings on the earlier speedy trial motions.

For the same reasons articulated in the speedy trial and Sixth Amendment portions of this order, the court denies defendant's tenth motion to dismiss.   See supra at pp. 32 & 36.

The speedy trial clock is still tolled as of the date of this order and the Sixth Amendment evaluation of Mr. Flying Horse's right to trial has not changed.

Defendant's tenth motion to dismiss (Docket 282) is denied.

## VII.   ORDER

Based on the above analysis, it is

ORDERED that defendant's objections (Docket 271) are overruled.

IT IS FURTHER ORDERED that the magistrate judge's report and recommendation (Docket 258) is adopted in its entirety.

IT IS FURTHER ORDERED that defendant's motions for entry of default and motion to grant unopposed motions (Dockets 56, 64 & 251) are denied.

IT IS FURTHER ORDERED that defendant's objections (Docket 277) are overruled.

IT IS FURTHER ORDERED that the magistrate judge's report and recommendation (Docket 259) is adopted in its entirety.

IT IS FURTHER ORDERED that defendant's motion to suppress (Docket 65) is denied.

IT IS FURTHER ORDERED that defendant's objection (Docket 280) is denied as moot.

IT IS FURTHER ORDERED that defendant's objections (Docket 317) are overruled.

IT IS FURTHER ORDERED that the magistrate judge's report and recommendation (Docket 264) is adopted as amended by this order.

IT IS FURTHER ORDERED that defendant's first, second, third, fourth, fifth, sixth, seventh, eighth and ninth motions to dismiss (Dockets 51, 97, 147, 148, 179, 187, 201, 218 & 250) are denied.

IT IS FURTHER ORDERED that defendant's objections (Docket 343) are overruled.

IT IS FURTHER ORDERED that the magistrate judge's report and recommendation (Docket 325) is adopted in its entirety.

IT IS FURTHER ORDERED that defendant's eleventh, twelfth and thirteenth motions to dismiss and his motion to remove the federal case to state court (Dockets 297, 301, 303 & 316) are denied.

IT IS FURTHER ORDERED that defendant's objections (Docket 323) are overruled.

IT IS FURTHER ORDERED that the magistrate judge's order (Docket 262) is affirmed.

IT IS FURTHER ORDERED that defendant's objections (Docket 294) are overruled.

IT IS FURTHER ORDERED that the magistrate judge's order (Docket 263) is affirmed.

IT IS FURTHER ORDERED that defendant's objections (Docket 311) are overruled.

IT IS FURTHER ORDERED that the magistrate judge's order (Docket 265) is adopted as amended by this order.

IT IS FURTHER ORDERED that defendant's objections (Docket 296) are overruled.

IT IS FURTHER ORDERED that the magistrate judge's order (Docket 266) is affirmed.

IT IS FURTHER ORDERED that defendant's objections (Docket 288) are overruled.

IT IS FURTHER ORDERED that the magistrate judge's order (Docket 269) is affirmed.

IT IS FURTHER ORDERED that defendant's motion for recusal of this district court judge (Docket 252) is denied.

IT IS FURTHER ORDERED that defendant's motion for the appointment of a new judge (Docket 299) is denied.

IT IS FURTHER ORDERED that defendant's objections (Docket 338) are overruled.

IT IS FURTHER ORDERED that the magistrate judge's order (Docket 326) is adopted as amended by this order.

IT IS FURTHER ORDERED that defendant's objections (Docket 344) are overruled.

IT IS FURTHER ORDERED that the magistrate judge's order (Docket 328) is adopted as amended by this order.

IT IS FURTHER ORDERED that defendant's objections (Docket 342) are overruled.

IT IS FURTHER ORDERED that the magistrate judge's order (Docket 329) is adopted as amended by this order.

IT IS FURTHER ORDERED that defendant's tenth motion to dismiss (Docket 282) is denied.

IT IS FURTHER ORDERED that a scheduling order will be filed after the

pretrial conference is held on January 21, 2022, at 1:30 p.m.   (Docket 331).

Dated January 7, 2022.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE